UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS EUGENE SMITH, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | No. 2:18-cv-2757-AC <br><br><br> ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, and DENY the Commissioner's cross-motion for summary judgment.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits and for supplemental security income on September 18, 2015. Administrative Record ("AR") 16.[2] The disability onset date for both applications was alleged to be January 28, 2013. Id. The applications were disapproved initially and on reconsideration in 2015 and 2016, respectively. AR 112-17, 119-24. On August 30, 2017, ALJ Christopher Knowdell presided over a video hearing in Sacramento, CA, on plaintiff's challenge to the disapprovals. AR 33-61 (transcript). Plaintiff appeared from Redding, CA, with his representative Glenn Skinner. AR 33-35. Vocational Expert Kathleen Spencer also testified. Id.

On December12, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 16-27 (decision), 28-32 (exhibit list). On August 20, 2018, after receiving a Request for Review dated December 15, 2017 as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on October 12, 2018. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 17 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1981, and accordingly was 31 years old on the alleged disability onset date, making him a "younger person" under the regulations. AR 26, 217; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has a high school education, and can communicate in English. AR 26, 347.

---

[2] The AR is electronically filed at ECF Nos. 11-3 to 11-10 (AR 1 to AR 494).

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

>   Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since January 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
>
> 3. [Step 2] The claimant has the following severe impairments: disc protrusions at T12-L1, L4-5, and L5-S1; spondylosis at C4-5 and C5-6; major depressive disorder; post-traumatic stress disorder; generalized anxiety disorder; panic disorder; and dependent personality traits (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: he could frequently climb and stoop; he could frequently reach overhead with the dominant right upper extremity; he could perform simple, repetitive tasks involving occasional interaction with the public and co-workers.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Step 5] The claimant was born [in 1981] and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

5

> 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. [Step 5, continued] The claimant has gained no transferrable skills from his past relevant work.
>
> 10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404. 1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 18-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 27.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by improperly rejecting the opinions of two examining physicians, Dr. Cormier and Dr. Sunde. ECF No. 14 at 9.

A. <u>The Medical Opinion Evidence and Pertinent Medical Records</u>

Because plaintiff challenges only the treatment of medical opinion evidence related to his mental health impairments, only opinions/portions of opinions related to mental health are addressed here. The relevant psychiatric record before the ALJ included the medical opinions of consultative examining psychologist Dr. Sid Cormier, consultative examining psychologist Dr. Chester Sunde, non-examining State agency reviewing physician Dr. Timothy Shumacher, non-examining State agency reviewing physician Dr. Randall Garland, and records from the Anderson Walk-in Medical Clinic and Native American Mental Health. AR 24-26. Plaintiff also submitted to consultative physical examinations by Dr. Roger Wagner and Dr. Guy Corkill.

Plaintiff met with Dr. Corkill, consultative examiner, at North State Medical Exams clinic in November 2013 for a "complete internal consultation" examination. AR 340-45. Dr. Corkill primarily focused on plaintiff's physical ailments, but also noted his complaints of anxiety,

6

insomnia, and difficulties with concentration and memory. AR 341-42. Dr. Corkill also reported that plaintiff had no history of inpatient psychiatric treatment or outpatient counseling. AR 341-42. Plaintiff denied any history of delusions or hallucinations. AR 342. Dr. Corkill noted that plaintiff was fully oriented, pleasant, and cooperative, with "good" eye contact. AR 343. Plaintiff responded to Dr. Corkill appropriately, and mental status testing showed intact memory. Id.

The following month, plaintiff underwent a consultative psychological examination with Dr. Sunde. AR 346-49. Plaintiff complained of severe anxiety and depression related to multiple car accidents and a history of having been molested as a child, which interferes with his concentration, ability to ride in cars, meet new people, and causes him to ruminate when presented with any type of stressor. AR 346. Dr. Sunde noted that plaintiff was not taking medication because he could not afford to continue prior prescriptions. AR 346. Plaintiff was previously on Klonopin, which helped "a little." Id. Plaintiff also reported that he has had counseling over the years, in addition to medication, but has not had ongoing treatment due to lack of resources. AR 347.

Dr. Sunde recorded that plaintiff displayed "good" grooming and "fair" eye contact, but that he exhibited slowed pace, "significant" impairment in concentration, and only "fair" persistence, and was fidgety throughout the interview. AR 347-48. Dr. Sunde found plaintiff had an average fund of knowledge, intact abstract thinking, and intact judgment and insight, he had intact (but slowed) memory, concentration, and ability to perform serial threes calculations (though he was "quite slow."). AR 348. Plaintiff made two errors on serial sevens. Id. Dr. Sunde reported Smith's mood as "extremely anxious" and "somewhat depressed," with congruent affect. AR 348. Plaintiff's thoughts were distracted, his speech was circumstantial and at times tangential, and he was preoccupied with his anxiety. AR 348.

Dr. Sunde diagnosed plaintiff with generalized anxiety disorder, panic disorder, and dependent personality traits. AR 348. Dr. Sunde concluded that plaintiff would have no impairment in his ability to perform simple commands, mild to moderate impairment in performing complex commands, and moderate to marked (or simply marked) impairment in his

ability to comply with job rules of safety and attendance, maintain persistence and pace in the workplace, respond to change in the workplace, and interact appropriately with supervisors, coworkers, and the public. AR 349.

Plaintiff underwent another consultative psychological examination in November 2015, this time with Dr. Cormier. AR 354-60. Dr. Cormier noted that plaintiff was "in very obvious psychological distress and demonstrated verbal and nonverbal behavior consistent with significant anxiety and indicated that he is uncomfortable being evaluated by older men." AR 355. Dr. Cormier reported plaintiff related to him in a "very unusual manner" during the evaluation and at several points insistent that the door be closed. AR 355. At times during the examination plaintiff "appeared somewhat overwhelmed and did not exert efforts consistent with his probable true levels of cognitive functioning" and though he "could not say" that plaintiff was malingering, Dr. Cormier felt that at times plaintiff let his anxiety become more exaggerated than it needed to be. Id.

Plaintiff complained of anxiety and depression, but reported that he was not taking any psychotropic medication at that time. AR 355-56. Plaintiff denied any history of inpatient psychiatric treatment and stated that he had been "in and out of counseling." AR 356. Plaintiff reported that his hobbies included taking care of his pets, watching television, and spending time on his computer. Id. It was noted that plaintiff reportedly left his last job as a paralegal because he moved, rather than due to a psychiatric breakdown. AR 359. Dr. Cormier noted that plaintiff was fully oriented, with intact thought processes, concentration, and foresight, and there was no evidence of hallucinations or delusions. AR 356. Plaintiff's scores on cognitive testing fell in the "below average" or "moderately/severely" impaired ranges. AR 357-58. However, Dr. Cormier noted that plaintiff's general vocabulary, word usage, reported history, and ability to conceptualize suggested that he had "average intellectual functioning." AR 356.

Dr. Cormier diagnosed mood disorder not otherwise specified, and episodic significant anxiety; posttraumatic stress disorder and dementia were to be ruled out. AR 358. Dr. Cormier concluded that plaintiff had mild to moderate impairment in his ability to perform not only complex and detailed tasks, but simple and repetitive tasks as well. AR 359. Dr. Cormier opined

that plaintiff's psychiatric symptoms would episodically impair his ability to work on a consistent basis. AR 359. He concluded that plaintiff had mild to moderate impairment in his ability to complete a normal workday (or workweek) without interruptions from his psychiatric symptoms and that plaintiff had "probable" significant impairment in his ability to deal with typical work stresses, but did not have impairment in his ability to interact with a limited number of coworkers or people in a work setting. AR 359. Dr. Cormier also concluded that plaintiff would be most successful with highly supportive supervision and would do better with a female supervisor. AR 359.

In November of 2015, Dr. Wagner performed a "comprehensive internal medicine" consultative physical examination which appears to have been focused primarily on plaintiff's physical ailments. AR 362. Dr. Wagner described Plaintiff as a "pleasant gentleman who provides an adequate history" AR 363. Plaintiff did not discuss any psychiatric symptoms or limitations at this exam, and he did not report taking any psychotropic medication. AR 362-63. Plaintiff reported to Dr. Wagner that he was able to cook, clean, shop, attend to his personal care, and live with friends. AR 363.

Medical reports from January 2016 show plaintiff was positive for memory loss secondary to a traumatic brain injury. AR 368. In the notes, the male provider indicated that he would "be happy" to continue treating plaintiff, but plaintiff expressed a desire to have a female provider because males make him nervous. AR 370. The provider assessed a poor prognosis given plaintiff's young age and the nature of his injuries. Id.

Plaintiff received outpatient psychiatric care at the Native American Mental Health Services (NAMHS) clinic in February 2016. AR 403-07. Plaintiff complained of depression, anxiety, fatigue, and post-traumatic stress disorder symptoms. AR 406. Medical notes reflect that plaintiff had normal appearance, behavior, speech, thought content, memory, fund of knowledge, concentration, judgment, and insight during these visits. AR 403-04, 406-07. Plaintiff's treatment recommendations included psychotropic medication (Clonodine and Zoloft) and outpatient counseling. AR 404-07. Plaintiff later sought treatment at the Anderson Walk-in

////

Clinic, where it was recorded that he had "mild" cognitive impairment and traumatic brain injury. AR 422-24.

### B. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).[3] "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### C. The ALJ Erred in Discounting the Opinions of Examining Physicians

The ALJ erred in discounting the medical opinions of Dr. Sunde and Dr. Cormier. In his opinion, the ALJ first considered Drs. Cormier and Sunde's opinions together and gave the opinions little weight for the same reasons, before giving additional reasons to reject Dr. Cormier. AR 24-25. First, the ALJ states that both opinions "provide disproportionately restrictive limitations when compared to the amount of dedicated mental health-specific treatment" that plaintiff received. AR 24. This is an impermissible basis to discount an opinion where the record is clear that plaintiff's inconsistency with mental health treatment was due to his inability to

---

[3] For applications filed on or after March 27, 2017, the Commissioner has eliminated the treating source rule and special deference to treating sources. See 20 C.F.R. § 404.1520c; see also Purdy v. Berryhill, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (summarizing new regulations). The changes are not applicable here because plaintiff filed in 2015.

afford treatment and the impact of the symptoms themselves. Plaintiff indicated to Dr. Sunde that he was previously on medication for his mental impairments which helped "a little," but that he was unable to afford the medication. AR 346. It is improper to deny a person benefits because they did not receive specific treatments due to the inability to afford those treatments. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (citing Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). Further, plaintiff testified that he waited so long to seek mental health treatment because he felt "hopeless" and that nothing could be done to help his symptoms. AR 42. It is improper for an ALJ "to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Second, the ALJ rejects Drs. Cormier and Sunde's opinions for being inconsistent with "material evidence including treating-source observations of logical thought process in addition to calm and cooperative behavior." AR 24, citing 399-407. The ALJ notes that the treatment notes were unavailable for Drs. Cormier and Sunde to review. AR 24-25. The treatment records at issue, however, contain references to psychological impairment as well as to logical thought process and cooperative behavior. For example, on February 5, 2016, plaintiff reported having a hard time with male authority figures due to being molested. AR 406. He was described as having difficulty answering questions as he "ponders a lot." AR 406. He presented with sad mood and affect. AR 407. He was prescribed Clonidine and Zoloft. AR 407.

Finally, the ALJ rejects Dr. Cormier's opinions because it was "based on somewhat unreliable information" as Dr. Cormier indicated that there were indications at the exam that plaintiff "let his anxiety become more exaggerated than it needed to be." AR 25. The ALJ also references Dr. Cormier's recommendation that plaintiff immediately contact the local county mental health agency for treatment, noting that such a recommendation was outside the scope of the exam. Id. The ALJ's reading of Dr. Cormier's assessment is incomplete; indeed, although Dr. Cormier reported potential exaggeration, he also reported that plaintiff was in "very obvious"

11

distress consistent with "significant anxiety."  AR 355.  Further, Dr. Cormier noted and accounted for potential exaggeration of some symptoms in his conclusions, so the ALJ's reliance on the note of potential exaggeration to discount Dr. Cormier's conclusion essentially factors that issue in twice.  The reference to Dr. Cormier's note that plaintiff should seek mental health treatment is puzzling; such a note does not contradict his opinion in any way, it simply indicates Dr. Cormier was concerned for plaintiff's mental wellbeing.

    D.    <u>Remand for an Immediate Award of Benefits</u>

Because the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence" for discounting the examining physicians' opinions, the ALJ erred.  <u>Bayliss</u>, 427 F.3d at 1216.  The error in rejecting the two opinions was not harmless, because if differently credited, the opinions may impact the assigned RCF and the determination of disability.  Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.' " <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  <u>Benecke v. Barnhart,</u> 379 F.3d 587, 593 (9th Cir. 2000).  Further development is necessary here; the ALJ must determine how to credit the opinions and how the opinions, properly credited, impact the RFC.  Thus, remand for further consideration by the ALJ is appropriate.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED;

    2. The Commissioner's cross-motion for summary judgment (ECF No. 17), is DENIED;

    3. The matter is REVERSED and REMANDED to the Commissioner for further consideration; and

////

////

////

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

SO ORDERED.

DATED: March 2, 2020

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE